UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| PETER S., | : |
| plaintiff, | : |
| v. | : Civil No. 3:23-cv-993-RAR |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| defendant. | : |

**RULING ON PENDING MOTIONS**

Peter S. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated May 19, 2022. Plaintiff timely appealed to this Court.

Currently pending are plaintiff's motion for an order reversing or remanding his case (Dkt. #19) and defendant's motion to affirm the decision of the Commissioner. (Dkt. #27.)

For the following reasons, the plaintiff's motion to remand or reverse is DENIED and the Commissioner's motion to affirm is GRANTED.

**PROCEDURAL HISTORY**

Plaintiff initially filed for disability insurance benefits under Title II and Title XVI on November 24, 2020. (R.

1

30.)  Plaintiff's claims were initially denied on September 3, 2021, and upon reconsideration on December 8, 2021. (R. 30.) Thereafter, plaintiff filed a written request for a hearing and Administrative Law Judge Edward Sweeney ("ALJ") held a hearing on March 25, 2022. (R. 48-73.)  After the hearing, ALJ Sweeney issued a written decision denying plaintiff's application on May 19, 2022. (R. 30-42.) Plaintiff thereafter sought review by the Appeals Council, which was denied on June 2, 2023. (R. 1-4.) Plaintiff then timely filed this action seeking judicial review. (Dkt. #1.)

## STANDARD OF REVIEW

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court may not make a de novo determination of whether a claimant is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court's function is to ascertain

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

2

whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . .." 42

3

U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific

## **THE ALJ'S DECISION**

Applying the five-step framework, the ALJ found at step one that plaintiff had not engaged in any substantial gainful activity since November 3, 2016. (R. 32.) At step two, the ALJ found that plaintiff had the following severe impairments: learning disorder, depressive disorder, and trauma related disorder. (R. 33.) In addition, the ALJ found that the plaintiff had the following nonsevere impairments: diabetes mellitus, hypertension, obesity, sciatica, status post placement of stent in the left lower extremity, and substance abuse disorder. (R. 33.)

At step three, the ALJ determined that plaintiff had no impairments or combination of impairments equal to a Listing. The ALJ concluded that plaintiff did not meet or medically equal Listing 12.04 (depressive, bipolar and related disorders), Listing 12.11 (neurodevelopmental disorders), or Listing 12.15 (trauma- and stressor-related disorders). (R. 35.) The ALJ found that the plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and therefore the "paragraph B" criteria was not satisfied. (R. 36.)

The ALJ found that the plaintiff had a moderate limitation in understanding, remembering or applying information. (R. 35.) The ALJ based his assessment on plaintiff's treatment records

---

job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

reporting that he presents as alert, oriented, had linear and logical thought process, normal speech, and intact memory to conversational testing. (R. 35.) The ALJ noted that plaintiff can draw, cook family recipes, and complete errands. (R. 35.) The ALJ acknowledges that plaintiff's record also shows memory loss, and that the consultative examination results in 2021 suggested poor vocabulary, simple speech and cognitive difficulty. (R. 35.)

    The ALJ found that the plaintiff had a moderate limitation in interacting with others. (R. 35.) The ALJ relied on reports showing that plaintiff is friendly, cooperative, makes good eye contact, has fluent speech, and good hygiene and grooming. (R. 35.) The ALJ also noted that plaintiff has been able to watch his nephew, run errands, and has had roommates in the past. (R. 35.) The ALJ acknowledges that the record also shows that plaintiff reports anxiety when he is around more than three people, he is overwhelmed by his living situation due to being around children and loud noises, and he is sometimes guarded during therapy sessions. (R. 35.)

    The ALJ found that the plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. (R. 35.) The ALJ relied on reports that plaintiff is able to engage in activities that require concentration, persistence, and pace, such as cleaning, drawing, coloring, cooking, and watching

documentaries. (R. 36.) The ALJ also acknowledges that the record shows plaintiff's history of auditory hallucinations, depression, anxiety, flashbacks, and trouble with sleep. (R. 35.) The ALJ notes that the hallucinations may be plaintiff's own voice and that he is able to ignore them. (R. 36.)

The ALJ found that the plaintiff had a moderate limitation for adapting or managing oneself. (R. 36.) The ALJ relied on records showing that the plaintiff reported passive suicidal ideations, but denied intent or plan, and is able to cope with feeling overwhelmed by drawing, coloring, cooking, or going outside. (R. 36.) The ALJ also notes that the plaintiff has good impulse control and is able to engage in activities of daily living such as cleaning and cooking. (R. 36.)  The ALJ also concluded that plaintiff failed to meet any of the criteria for "paragraph C." (R. 36.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to

> Perform a full range of work at all exertional levels but with the following non-exertional limitations: he is able to understand, remember, and carry out simple instructions for two hour segments during the course of a typical work day in a setting with no team work or collaboration on task performance; is able to tolerate occasional work place changes but would be precluded from a job requiring travel as a part of the actual job duties; he would be able to travel to and from the job location.

(R. 36.)  At step four, the ALJ concluded that plaintiff could perform his past relevant work as a kitchen helper. (R. 41.) Lastly, at step five of the process, the ALJ determined that based on the testimony of a vocational expert, there were sufficient other jobs available in the national economy that plaintiff could also perform. Specifically, the ALJ identified the positions of Routing Clerk, Cleaner, and Stock Checker. (R. 42.)

Upon the completion of the five-step sequential evaluation process, the ALJ determined that the plaintiff was not under a disability between the alleged onset date and the date of the decision. (R. 42.)

## DISCUSSION

Plaintiff has raised one claim of error which he argues necessitates remand. Plaintiff argues that the ALJ erred by failing to explain why certain alleged limitations from the State agency psychological opinions were not included in the plaintiff's RFC.  Plaintiff alleges this was erroneous because the opinions of the State agency psychological consultants were found to be persuasive by the ALJ.

The Commissioner responds to the claim of error by arguing that the ALJ reasonably interpreted the medical opinions of the State agency psychological consultants and articulated an RFC incorporating the limitations outlined in their opinions.

8

Therefore, according to the Commissioner, while the plaintiff might not agree with the final RFC determination, it was not erroneous and was supported by substantial evidence.

When an individual's impairment does not meet or equal a listed impairment, the ALJ makes "a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520€. An individual's residual functional capacity ("RFC") is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Plaintiff has the burden of establishing a diminished RFC. *See* Butts v. Barnhart, 388 F. 3d 377, 383 (2d Cir. 2004).

The Social Security regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §404.1520c(a). The ALJ will consider any medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" *Id.* §§ 494.1520c(c), 416.920(c)(c). The ALJ must explain how he or she considered the "supportability" and

9

"consistency" factors in the evaluation, but the ALJ need not explain how he or she considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b.

In the event that the court does not find that the RFC determination was legally erroneous, the issue will become one of substantial evidence. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013) (summary order). Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

As noted earlier, the ALJ determined that plaintiff had an RFC to

> Perform a full range of work at all exertion levels but with the following non-exertional limitations: he is able to understand, remember, and carry out simple instructions for two hour segments during the course of a typical work day in a setting with no team work or collaboration on task performance; is able to tolerate occasional work place changes but would be precluded from a job requiring travel as a part of the actual job duties; he would be able to travel to and from the job location.

(R. 36.)

The plaintiff alleges that the ALJ committed legal error by

failing to explain why alleged limitations from the State agency psychological opinions were omitted from the RFC despite the fact that the ALJ found the opinions to be persuasive. (Dkt. #19-1 at 1.) Specifically, the plaintiff alleges that the ALJ committed error in relation to the ALJ's assessment of plaintiff's ability to perform simple tasks beyond 1-2 step instructions and plaintiff's ability to interact with the public. (Dkt. #19-1 at 10-14.)

The Commissioner responds by arguing that the ALJ thoroughly explained how he considered the assessments of the State agency consultants, Adrian Brown, Ph.D., and Thomas Hill, M.D., both of which he found persuasive. (Dkt. #27-2 at 2.) The consultants found that the plaintiff could understand and remember one or two step instructions but would have difficulty with more complex instructions. (Dkt. #27-1 at 3.) Furthermore, the consultants found that the plaintiff could carry out simple, repetitive tasks. (Dkt. #27-1 at 3.) The Commissioner argues that the ALJ was entitled to look at these findings as a whole, and properly conclude that the consultants did not believe that plaintiff's difficulty understanding and remembering more than one- or two-step instructions did not completely prevent plaintiff from carrying out simple, repetitive tasks. (Dkt. #27-1 at 3.) Thus, the Commissioner asserts that the ALJ formulated the RFC properly. (Dkt. #27-1 at 3.)

The Commissioner argues that the ALJ properly declined to

11

include a specific prohibition on public interaction in the RFC because the ALJ reasonably interpreted Dr. Brown's assessment that plaintiff would "do best" in a nonpublic environment not as imposing a strict restriction, but rather to highlight the outer bounds of plaintiff's ability to interact with the public. (Dkt. #27-1 at 11-12.) Furthermore, the Commissioner argues that the ALJ was not obligated to adopt Dr. Hill's assessment that plaintiff required limitation on public contact, because even though the ALJ found Dr. Hill's assessment persuasive, the ALJ was not obligated to adopt an unspecified limitation verbatim. (Dkt. #27-1 at 3.)

Dr. Hill and Dr. Brown both supplied medical opinions as State agency psychological consultants. As permitted, and unchallenged by plaintiff, the ALJ evaluated these medical opinions and determined that they were adequately supported by and consistent with the record and are therefore, persuasive. Specifically, the ALJ found that the consultants' opinions were "supported by their review of the [plaintiff's] record, citation to the medical record and explanation of their findings," and further that they were consistent with the record and with evidence supplied by plaintiff following the review of the record. (R. 38-39.)

Dr. Brown opined that the plaintiff is not significantly limited in understanding and remembering very short and simple

12

instructions and would be moderately limited in understanding and remembering detailed instructions. Dr. Brown also opined that plaintiff "is able to understand and retain simple directives of 1-2 steps" but that plaintiff "will have a difficult time remembering more complex instructions." (R. 116.) Dr. Brown's opinion also found the plaintiff could carry out simple and repetitive tasks, while being moderately limited in carrying out detailed instructions. (R. 116.) Dr. Brown also opined that, due to a history of social anxiety, the plaintiff "would do best in a nonpublic work setting" while noting an ability to ask for help if needed and to interact with supervisors and peers and a moderate limitation in the ability to interact with the general public. (R. 117.)

Similarly, Dr. Hill found that plaintiff could "understand and retain simple directives of 1-2 steps" and would "have a difficult time remembering more complex instructions." (R. 148.) Further, Dr. Hill determined that plaintiff, while occasionally distracted, could carry out simple and repetitive tasks. (R. 148.) Dr. Hill also found that plaintiff "can become uncomfortable in certain settings" and is moderately limited in his ability to interact with the general public. (R. 148.)

"An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." Curry v. Comm'r of Soc.

13

Sec., 855 Fed. Appx. 46, 48 (2d Cir. 2021). In resolving evidence, an ALJ is entitled to accept parts of a doctor's opinion and reject others. *See* Veino v. Barnhart, 312 F.3d 578, 588-89 (2d Cir. 2002). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).

An ALJ is permitted to reject certain limitations and only "required to provide [a] rationale in the written decision sufficient to allow this Court to conduct an adequate review of h[is] findings.... It is not the function of this Court to speculate as to the evidence and legal standards on which the ALJ based h[is] decision, nor to supply its own rationale where the ALJ's decision is lacking or unclear." Dittmar v. Comm'r of Soc. Sec., No. 1:16-CV-0404(CFH), 2017 WL 2333836, at *5(N.D.N.Y May 30, 2017).

However, when articulating the rationale for the RFC, the ALJ need not discuss every shred of record evidence; the Court need only be able to understand the ALJ's rationale based on the decision as a whole, read together with the evidence of record. Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013). This means, as is relevant here, that the decision needs to be sufficiently articulated for the court to understand, based on the decision as a whole and the record, how the ALJ considered the medical opinions and/or prior administrative medical

14

findings in reaching the RFC. *Cf*. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

In the present case, the ALJ noted the findings of Dr. Brown and Dr. Hill and recited that they found that the plaintiff "had moderate limitation in the areas of mental functioning such that he could understand, retain, and carry out simple tasks, would do best in a non-public work setting, can interact adequately with supervisors and peers, and could adapt adequately to minor changes in work routine." (R. 38.)  The ALJ continued by noting that these opinions were supported by a review of, and citation to, the record.  Further, the ALJ found support in the explanations of the doctors, noting that they highlighted plaintiff having "a history of learning impairments, emotional trauma, depression, and substance abuse."  (R. 38.)  The ALJ also noted that there were some later supplied records, to which Dr. Brown and Dr. Hill did not have at the time they rendered their opinions.  However, the ALJ noted that the findings of the doctors are "generally consistent" with the subsequent records.  The ALJ went on to note that the newer records show some symptoms, but also that the plaintiff "remains oriented, cooperative, has normal speech, linear and logical thought process, fair insight, good judgment, good impulse

15

control, good attention and intact memory to conversational testing." (R. 39; citing 848, 869, 1175, and 1186.) The ALJ also relied upon reports stating that the plaintiff is utilizing a variety of coping techniques and is able to perform some activities of daily living.  (R. 39; citing 851 and 888.)

As noted previously, the plaintiff argues that the ALJ failed to discuss or evaluate the limitations indicated by Dr. Brown and Dr. Hill in their medical opinions.  More specifically, the alleged limitations related to plaintiff's task performance ability and his ability to interact with the public. Plaintiff argues that this error necessitates remand and does not permit the court to conduct a meaningful review of the ALJ's decision.  The Court disagrees.

Taken together, Dr. Brown and Dr. Hill opined that plaintiff could follow simple directives of 1-2 steps and would have difficulty with more complex instructions. (R. 116 and 148.) Both doctors also assessed moderate limitations in the ability to carry out detailed instructions.  (R. 116 and 148.) In turn, the ALJ incorporated this into the RFC by stating that the plaintiff could "understand, remember, and carry out simple instructions for two hour segments during the course of a typical work day." (R. 36.) As noted by the Commissioner, this limitation, while not explicit regarding 1-2 step instructions, accounts for the moderate limitation plaintiff exhibits related

16

to complex instructions. In fact, the Social Security Administration identifies that a party found to have a moderate limitation has "fair" functioning, outlined as an ability to perform an activity "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §12.00 (F)(2)(c).

Additionally, the opinions of Dr. Brown and Dr. Hill do not outright reject the notion that plaintiff can sustain work environments with greater than 1-2 step instructions.  Indeed, their opinions acknowledge some difficulty in understanding and carrying out detailed instructions, hence the label "moderate limitation."  Further, as discussed previously, the ALJ cited other record evidence in evaluating the findings of Dr. Brown and Dr. Hill which outlined further treatment of plaintiff that appears to be in conjunction with the RFC eventually assigned.

As to the restriction related to 1-2 step instructions the Court does not struggle to read the record and the ALJ's decision and glean the reasoning behind his findings.  The Court has no issue with the ALJ's findings or discussion related to plaintiff's ability to work with the public.  As the ALJ noted in his opinion when discussing the paragraph B factors, the record indicates that the plaintiff reports anxiety around groups of people, but the record also indicates that plaintiff presents as friendly, cooperative, and with fluent speech.  (R.

17

35.) Additionally, plaintiff reported the ability to watch his nephew and that plaintiff is feeling more optimistic when doing so. (R. 35.) Plaintiff also has lived with roommates and is able to leave the house to take care of errands. (R. 35.) Other records mention plaintiff planning a trip to Florida to assist a friend in moving and using coping skills when feeling anxious. (R. 38.) All of this evidence precedes the discussion of the opinions of Dr. Brown and Dr. Hill but goes to the ALJ's statement that the doctors' opinions are generally consistent with the record.

Further, as with their findings related to complex tasks, Dr. Hill and Dr. Brown rated plaintiff as moderately limited when it comes to interacting with the public. (R. 117 and 148.) For instance, noting that plaintiff would "do best" in a non-public setting due to anxiety or would be "uncomfortable in certain settings." (R. 117 and 148.) As noted, a "moderate limitation" is not the same as being completely unable bar to do something, and the other evidence in the record cited by the ALJ supports his RFC findings as written.

As with the RFC determination, the plaintiff argues that there was error in the hypothetical questions to the vocational expert ("VE"). Specifically, the alleged error stems from the lack of inclusion of the previously discussed limitations related to public facing work and the instruction complexity.

Having determined that the ALJ assigned a proper RFC, sufficiently outlining and discussing the RFC finding and the limitations contained therein, the Court finds no error in the hypotheticals posed to the VE at step 5.

Finally, the Court notes that the plaintiff argued in his reply to defendant's opposition that counsel for the Commissioner engaged in impermissible *post hoc* rationalization of the ALJ's decision. (Dkt. #28.) In other words, plaintiff argues that the Commissioner's brief essentially attempted to clean up the ALJ's mess after the fact. The Commissioner responds and articulates that it is not a *post hoc* rationalization to articulate and demonstrate the internal consistency of the ALJ's decision to the Court. (Dkt. #31.) The Court agrees. The Commissioner highlights the rationale that the ALJ utilized in reaching the RFC in this case and identifies and discusses the records that the ALJ cited in reaching that conclusion.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion to remand (Dkt. #19) is DENIED and the Commissioner's motion to affirm (Dkt. #27) is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal

Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 30th day of September 2024, at Hartford, Connecticut.

```
                           _____/s/_____
                           Robert A. Richardson
                           United States Magistrate Judge
```